ORIGINAL

FILED IN CHAMBERS
U.S.D.C. - Atlanta

SEP - 9 2020

James N. Hatten, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT KELSKE;<br>FAWZIYYAH CONNOR;<br>STEPHANIE HOGAN;<br>JEROD LITTLE;<br>RENEE LITTLE;<br>MAURICE LAWSON;<br>TODD TAYLOR;<br>PAIGE MCDANIEL;<br>ANTHONY RICHARD; AND<br>CEPHUS CHAPMAN | CRIMINAL INDICTMENT<br><br>NO.  1:20-CR348 |

THE GRAND JURY CHARGES THAT:

### Count One

*Bank Fraud Conspiracy*
(18 U.S.C. § 1349)

1. Beginning on a date unknown, but by at least in or about December 2013, and continuing to a date unknown but until at least in or about August 2018, in the Northern District of Georgia and elsewhere, the defendants,

ROBERT KELSKE;
FAWZIYYAH CONNOR;
STEPHANIE HOGAN;
JEROD LITTLE;
RENEE LITTLE;
MAURICE LAWSON;
TODD TAYLOR; AND
PAIGE MCDANIEL

and others known and unknown, including Eric Hill and Donald Fontenot, did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding with each other, to execute a scheme and artifice to defraud multiple mortgage lending businesses whose activities affect interstate and foreign commerce, and to obtain money, funds and credits owned by and under the custody and control of the aforementioned mortgage lending businesses by means of materially false and fraudulent pretenses, representations and promises and by omission of material facts, in violation of Title 18, United States Code, Section 1344.

### The Objects of the Conspiracy

The objects of the conspiracy were as follows:

2. Eric Hill and others known and unknown sought to and did purchase real properties and induce mortgage companies to fund mortgages on residential properties by submitting materially false and fraudulent loan applications, making fraudulent representations and submitting fabricated documentation that falsely represented buyers' employment, income and assets.

3. Hill and his conspirators sought to and did enrich themselves either by receipt of substantial commissions and revenues associated with these real estate

and loan transactions and/or the receipt of loan proceeds to purchase a home without due credit worthiness. Of the more than 100 residential property transactions that are the result of this conduct, as of February 2020, at least 50 had gone through loss mitigation, sought loan modifications and/or were in delinquent status.

### Parties, Relevant Persons, Entities

At times relevant to this indictment:

4. The following entities were among the mortgage lending businesses that financed or refinanced debt secured by an interest in real estate, and whose activities affect interstate and foreign commerce: Caliber Home Loans, DHI Mortgage Ltd, Homebridge Financial Services, Inc., First Guaranty Mortgage Corporation, Fairway Independent Mortgage, Nations Direct Mortgage and United Shore Financial Services, LLC (collectively, "Mortgage Lenders").

5. Crown Communities was a homebuilder in Georgia and the Southeast. DR Horton, Inc., headquartered in Texas, is one of the largest homebuilders in America. In 2014, Crown Communities became an affiliate of DR Horton (collectively, "DR Horton").

6. Hill was a real estate salesperson licensed by the Georgia Real Estate Commission. Hill was employed by DR Horton for several years until he was terminated on or about May 14, 2016. Hill also controlled Peckk Realty, LLC, a real estate firm located in Fairburn, Georgia that was formed in 2011 and administratively dissolved on or about December 31, 2015. After being

terminated from DR Horton, Hill became affiliated with Anthony Richard Realty, LLC ("Richard Realty") a real estate firm located in Macon, Georgia.

7. Defendant ROBERT KELSKE was a real estate broker licensed by the Georgia Real Estate Commission. He worked for DR Horton from on or about March 9, 2015 until he was terminated on or about May 14, 2016.

### Manner and Means of the Conspiracy

The manner and means of the conspiracy were, in substance, as follows:

8. Beginning by at least December 2013, and continuing until at least August 2018, Hill, KELSKE and other licensed real estate conspirators facilitated the submission of fraudulent information in more than 100 mortgage loan applications.

9. As part of the mortgage loan application process, borrowers were required to complete forms such as a Uniform Residential Loan Application, and a Borrower's Certification and Authorization, and to provide copies of payroll check stubs, bank statements, IRS Forms W-2 and any other information required by the lenders. These documents were typically submitted by the borrower to the lender for review and approval.

10. With the help of Hill, KELSKE and other conspirators, certain borrowers knowingly and unknowingly submitted and caused to be submitted false and fraudulent information to the mortgage lenders to procure mortgage financing for the real property transactions. This false and fraudulent information included, among other things, the borrower's occupation and place of employment, income, and assets.

11. Among the tactics used to avoid scrutiny were claims of short-term employment (which limited the ability to independently document income), claims of employment beginning after January 1 (which limited the expectation that the employment would be reflected on a prior year's W-2 or tax returns), conspirators verifying fake employment both verbally and in writing, altering actual bank statements and earnings statements and generating entirely falsified pay records.

12. As part of the conspiracy, Hill and KELSKE would often coordinate with other conspirators including homebuyer conspirators, who would edit genuine documents or fabricate entirely new documents that were submitted to potential mortgage lenders by, or on behalf of, the borrowers. Conspirators who created or edited fraudulent documents received payments from Hill and other conspirators for doing so.

13. Defendants STEPHANIE HOGAN and FAWZIYYAH CONNOR were among the conspirators who created the fabricated documents submitted to mortgage lenders. These individuals are referred to as DOCUMENT FABRICATORS in this indictment.

14. As part of the mortgage loan application process, mortgage lenders would sometimes contact persons listed as employers to verify employment and income as set forth in the mortgage loan application materials. Certain conspirators knowingly provided, and caused to be provided, false "verifications" of this information.

15. Defendants PAIGE MCDANIEL, JEROD LITTLE, RENEE LITTLE, TODD TAYLOR and MAURICE LAWSON, along with Donald Fontenot, were among the conspirators who provided false employment verifications in support of mortgage applications. These individuals are referred to as EMPLOYMENT VERIFIERS in this indictment.

16. As part of the conspiracy, Hill and KELSKE obtained commissions and fees in connection with the fraudulently procured loans.

17. As part of the conspiracy, certain DOCUMENT FABRICATORS and EMPLOYMENT VERIFIERS received payments from Hill and other conspirators, including homebuyer conspirators, for their acts furthering the conspiracy.

18. HOGAN, JEROD LITTLE, LAWSON, and MCDANIEL also obtained their own mortgages using fraudulent documents as part of this scheme. CONNOR prepared and had prepared fraudulent documents in support of their own mortgage applications as part of this scheme, but their loans did not close.

All in violation of Title 18, United States Code, Section 1349.

### Counts Two through Eleven
*Bank Fraud*
(18 U.S.C. § 1344 and § 2)

19. Paragraphs 2 through 18 are incorporated here.

20. On or about the dates listed below in Column B, the exact dates unknown, in the Northern District of Georgia and elsewhere, the defendants listed below in Column D, aided and abetted by each other and by others known and unknown, did knowingly execute and attempt to execute a scheme and

artifice to defraud the Mortgage Lenders listed below in Column E and to obtain, by means of materially false and fraudulent pretenses, representations and promises, and by omission of material facts, as more specifically set forth below in Column F, certain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of the below-listed Mortgage Lenders:

| A | B | C | D | E | F |
|---|---|---|---|---|---|
| Counts | Closing Date (on or about) | Property Description (Purchaser) | Defendants | Mortgage Lender | Loan (approximate value) and Related Fraudulent Conduct |
| 2 | 8/7/15 | 2743 Feldspar Way (R.J.) | ROBERT KELSKE STEPHANIE HOGAN TODD TAYLOR | DHI Mortgage Ltd | With regard to a $175,546 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 3 | 11/17/15 | 8419 Members Drive (D.G.) | STEPHANIE HOGAN JEROD LITTLE RENEE LITTLE | Caliber Home Loans | With regard to a $288,181 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 4 | 12/15/15 | 2763 Feldspar Way (D.A.) | ROBERT KELSKE STEPHANIE HOGAN FAWZIYYAH CONNOR MAURICE LAWSON | Caliber Home Loans | With regard to a $196,857 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 5 | 12/22/15 | 64 Lafayettes Landing (T.R.S.) | ROBERT KELSKE STEPHANIE HOGAN | Caliber Home Loans | With regard to a $193,878 mortgage, the defendants caused to be submitted falsified bank statements, earning statement(s) and verification of employment |
| 6 | 1/29/16 | 110 Fairmont Trace (E.S.) | STEPHANIE HOGAN RENEE LITTLE | Homebridge Financial Services, Inc. | With regard to a $380,000 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 7 | 2/29/16 | 2709 Topaz Road (M.B.) | STEPHANIE HOGAN FAWZIYYAH CONNOR PAIGE MCDANIEL | Homebridge Financial Services, Inc. | With regard to a $189,523 mortgage, the defendants caused to be submitted falsified bank statement(s) earnings statements, verification of employment |

| | | | | | |
|---|---|---|---|---|---|
| 8 | 3/24/16 | 10031 Musket Ridge Circle (S.B.) | ROBERT KELSKE FAWZIYYAH CONNOR TODD TAYLOR | Caliber Home Loans | With regard to a $250,489 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 9 | 6/16/16 | 2455 Garnet Avenue (P.A.) | FAWZIYYAH CONNOR PAIGE MCDANIEL | Nations Direct Mortgage | With regard to a $208,857 mortgage, the defendants caused to be submitted falsified bank statement(s), earnings statements and verification of employment |
| 10 | 6/30/16 | 2189 Dodson Woods Drive (A.B.) | FAWZIYYAH CONNOR | Fairway Independent Mortgage | With regard to a $217,654 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 11 | 3/7/17 | 2820 Spice Tree Trail, SE (K.A.) | FAWZIYYAH CONNOR MAURICE LAWSON | United Shore Financial Services, LLC | With regard to a $334,970 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |

All in violation of Title 18, United States Code, Section 1344 and Section 2.

## Counts Twelve though Twenty-One
*False Statements to a Mortgage Lender*
(18 U.S.C. § 1014 and § 2)

21. Paragraphs 2 through 18 are incorporated here.

22. On or about the dates listed below in Column B, the exact dates unknown, in the Northern District of Georgia and elsewhere, the defendants listed in Column D, aided and abetted by each other and by others known and unknown, knowingly made a false statement and report for the purpose of influencing the action of the Mortgage Lenders listed in Column E, in connection with an application, advance, discount, purchase, purchase agreement,

repurchase agreement, commitment and loan in that the defendants falsified the information listed in Column F:

| A | B | C | D | E | F |
|---|---|---|---|---|---|
| Counts | Closing Date (on or about) | Property Description (Purchaser) | Defendants | Mortgage Lender | Loan (approximate value) and Related False Statements and Reports |
| 12 | 8/7/15 | 2743 Feldspar Way (R.J.) | ROBERT KELSKE STEPHANIE HOGAN TODD TAYLOR | DHI Mortgage Ltd | With regard to a $175,546 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 13 | 11/17/15 | 8419 Members Drive (D.G.) | STEPHANIE HOGAN JEROD LITTLE RENEE LITTLE | Caliber Home Loans | With regard to a $288,181 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 14 | 12/15/15 | 2763 Feldspar Way (D.A.) | ROBERT KELSKE STEPHANIE HOGAN FAWZIYYAH CONNOR MAURICE LAWSON | Caliber Home Loans | With regard to a $196,857 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 15 | 12/22/15 | 64 Lafayettes Landing (T.R.S.) | ROBERT KELSKE STEPHANIE HOGAN | Caliber Home Loans | With regard to a $193,878 mortgage, the defendants caused to be submitted falsified bank statements, earning statement(s) and verification of employment |
| 16 | 1/29/16 | 110 Fairmont Trace (E.S.) | STEPHANIE HOGAN RENEE LITTLE | Homebridge Financial Services, Inc. | With regard to a $380,000 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 17 | 2/29/16 | 2709 Topaz Road (M.B.) | STEPHANIE HOGAN FAWZIYYAH CONNOR PAIGE MCDANIEL | Homebridge Financial Services, Inc. | With regard to a $189,523 mortgage, the defendants caused to be submitted falsified bank statement(s) earnings statements, verification of employment |

| | | | | | |
|---|---|---|---|---|---|
| 18 | 3/24/16 | 10031 Musket Ridge Circle (S.B.) | ROBERT KELSKE FAWZIYYAH CONNOR TODD TAYLOR | Caliber Home Loans | With regard to a $250,489 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 19 | 6/16/16 | 2455 Garnet Avenue (P.A.) | FAWZIYYAH CONNOR PAIGE MCDANIEL | Nations Direct Mortgage | With regard to a $208,857 mortgage, the defendants caused to be submitted falsified bank statement(s), earnings statements and verification of employment |
| 20 | 6/30/16 | 2189 Dodson Woods Drive (A.B.) | FAWZIYYAH CONNOR | Fairway Independent Mortgage | With regard to a $217,654 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |
| 21 | 3/7/17 | 2820 Spice Tree Trail, SE (K.A.) | FAWZIYYAH CONNOR MAURICE LAWSON | United Shore Financial Services, LLC | With regard to a $334,970 mortgage, the defendants caused to be submitted falsified bank statements, earnings statements and verification of employment |

All in violation of Title 18, United States Code, Section 1014 and Section 2.

## Count Twenty-Two
*Wire Fraud Conspiracy*
(18 U.S.C. § 1349)

23. Paragraphs 2 through 18 are incorporated here.

24. Beginning on a date unknown, but by at least in or about December 2013, and continuing to a date unknown but until at least in or about August 2018, in the Northern District of Georgia and elsewhere, the defendants,

ROBERT KELSKE;
CEPHUS CHAPMAN; AND
ANTHONY RICHARD

and others known and unknown, including Eric Hill, did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding with each other to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by the omission of material facts, well knowing and having reason to know that said pretenses were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, and, in so doing, with the intent to defraud, caused interstate wire communications to be made, in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

### Parties, Relevant Persons, Entities

At times relevant to this indictment:

25. MMG was a law firm that conducted real estate closings. MMG and other similar law firms would typically hold the purchase money from the homebuyer and the homebuyer's lender in escrow until the closing, upon which the law firm would distribute the funds to the seller and any other designated parties, including the listing agent and any selling agent, consistent with the Settlement Statement. Many of the home sales brokered by Hill, KELSKE and their conspirators were closed by MMG. MMG banked with Wells Fargo Bank, NA ("Wells Fargo"), whose headquarters during the relevant time period were in San Francisco, California.

26. Richard Realty was a real estate agency owned by ANTHONY RICHARD. After being fired from DR Horton, Hill worked for Richard Realty.

Richard Realty banked with BB&T, whose headquarters during the relevant time period were in Winston-Salem, North Carolina.

27. Cephus Chapman Realty, LLC ("Chapman Realty") was a real estate agency owned by CEPHUS CHAPMAN. Chapman Realty banked with State Bank and Trust Company ("State Bank"), whose headquarters during the relevant time period were in Atlanta, Georgia.

28. Peckk Realty, controlled by Hill, banked with SunTrust Bank, whose headquarters during the relevant time period were in Atlanta, Georgia.

29. D.K. was the wife of KELSKE during some or all of the relevant time period. D.K. banked with Wells Fargo.

### Manner and Means of the Conspiracy

The manner and means of the conspiracy were, in substance, as follows:

30. Between in or about December 2013 and in or about August 2018, Eric Hill, ROBERT KELSKE, ANTHONY RICHARD, CEPHUS CHAPMAN and others known and unknown, facilitated the submission of fraudulent real estate agent representation information in connection with numerous real estate contracts.

31. In conjunction with its construction of new homes, DR Horton engaged real estate salespersons and agents to represent it in the home-selling process. Referred to as "Listing Agents" in this indictment, these individuals worked to find buyers for the DR Horton homes. When a home sale successfully closed, the Listing Agents qualified to receive a commission from DR Horton.

32. Sometimes homebuyers were also represented by real estate agents, referred to as "Selling Agents" in this indictment. Often, however, homebuyers were not represented by their own Selling Agent. In those cases, the homebuyer typically worked directly with the Listing Agents to negotiate the purchase of the home.

33. When a homebuyer went under contract to purchase a home from DR Horton, an additional agreement, sometimes called a Commission Confirmation Agreement, was entered between DR Horton, the Listing Agent, and, when the buyer was represented, by the buyer's Selling Agent. Under this agreement, DR Horton agreed to pay a commission to the Listing Agent upon the closing of the home sale. When the agreement indicated that the homebuyer had a Selling Agent, DR Horton agreed to pay an additional commission to that broker.

34. When the homebuyer had no Selling Agent, DR Horton paid no Selling Agent commission, and consequently, paid less in total commission.

35. Shortly before a home closing, the homebuyer and seller would receive a Settlement Statement (sometimes referred to as a HUD-1 Settlement Statement or Alta Settlement Statement). The Settlement Statement is intended to disclose a complete list of the homebuyer's and seller's incoming and outgoing funds, including the recipients of those funds. The Settlement Statement identifies all commissions to be paid to the Listing Agent and Selling Agent.

36. With the help of Hill, KELSKE, RICHARD, CHAPMAN and other conspirators, certain homebuyers knowingly and unknowingly submitted false and fraudulent information to DR Horton indicating that the homebuyer was

represented by a Selling Agent. As a result, DR Horton agreed to pay unearned commissions to Selling Agents, and the Settlement Statement reflected that DR Horton would pay commissions to those Selling Agents.

37. In reality, the Selling Agent frequently did not represent the homebuyer and had performed no services for the homebuyer. In many cases, the homebuyer had never even met the Selling Agent purporting to represent the homebuyer.

38. To avoid detection, the purported Selling Agent would frequently claim to be unavailable to attend the closing in person, and would instead send wiring instructions to receive the commission.

39. The false information on the Settlement Statement caused DR Horton, via the escrow agent, to pay a commission to Selling Agents that DR Horton otherwise would not have paid, causing funds to be transmitted by means of interstate wire. The Selling Agent would then funnel most of the commission back to the broker or brokerage responsible for adding his or her name to the agreement, while keeping a small share as compensation for his or her role in the scheme.

40. As part of the scheme, Hill and KELSKE acted as the Listing Agent, and in coordination with other Listing Agent conspirators. They prepared and caused to be prepared Commission Confirmation Agreements and Settlement Statements that falsely reflected that the homebuyers were represented by Selling Agents.

41. RICHARD and CHAPMAN were among the Selling Agents who worked in coordination with Hill and KELSKE to defraud DR Horton out of unearned commissions.

42. Hill, KELSKE, RICHARD, CHAPMAN and their conspirators sought to and did enrich themselves by receipt of substantial commissions and revenues associated with these real estate and loan transactions.

All in violation of Title 18, United States Code, Section 1349.

### Counts Twenty-Three through Thirty
*Wire Fraud*
(18 U.S.C. § 1343 and § 2)

43. Paragraphs 2 through 18 and 25 through 42 are incorporated here.

44. On or about the dates listed below in Column B, in the Northern District of Georgia and elsewhere, the defendants listed below in Column C, aided and abetted by others known and unknown, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did, with intent to defraud, cause to be transmitted by means of a wire communication in interstate and foreign commerce the funds listed below in Column D from the account listed below in Column E to the account listed below in Column F:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Count | Date (on or about) | Defendants | Amount (approx.) | From | To | Home-buyer |
| 23 | 10/30/15 | ANTHONY RICHARD | $12,333.50 | MMG (Wells Fargo x0248) | Richard Realty (BB&T x9604) | K.U. |
| 24 | 10/30/15 | ANTHONY RICHARD | $9,314 | Richard Realty (BB&T x9604) | Peckk Realty (SunTrust x7184) | K.U. |
| 25 | 12/15/15 | ROBERT KELSKE CEPHUS CHAPMAN | $12,024.50 | MMG (Wells Fargo x0248) | Chapman Realty (State Bank x9608) | D.A. |
| 26 | 12/18/15 | ROBERT KELSKE CEPHUS CHAPMAN | $9,024 | Chapman Realty (State Bank x9608) | D.K. (Wells Fargo X2749) | D.A. |
| 27 | 12/23/15 | ANTHONY RICHARD | $13,772.75 | MMG (Wells Fargo x0248) | Richard Realty (BB&T x9604) | T.R.S. |
| 28 | 12/23/15 | ANTHONY RICHARD | $10,772 | Richard Realty (BB&T x9604) | Peckk Realty (SunTrust x7184) | T.R.S. |
| 29 | 3/25/16 | ROBERT KELSKE CEPHUS CHAPMAN | $7,653 | MMG (Wells Fargo x0248) | Chapman Realty (State Bank x9608) | S.B. |
| 30 | 3/25/16 | ROBERT KELSKE CEPHUS CHAPMAN | $4,653 | Chapman Realty (State Bank x9608) | D.K. (Wells Fargo x2749) | S.B. |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## Forfeiture

45. Upon conviction of one or more of the offenses alleged in Counts One through Thirty of this indictment, the defendants,

>   ROBERT KELSKE;
>   FAWZIYYAH CONNOR;
>   STEPHANIE HOGAN;
>   JEROD LITTLE;
>   RENEE LITTLE;
>   MAURICE LAWSON;
>   TODD TAYLOR;
>   PAIGE MCDANIEL;
>   ANTHONY RICHARD; AND
>   CEPHUS CHAPMAN

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of said violations, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Thirty of this Indictment.

46. If, as a result of any act or omission of a defendant, any property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be subdivided without difficulty;

the United States of America intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A ___TRUE___ BILL

___/s/___
FOREPERSON

BYUNG J. PAK
 *United States Attorney*

___/s/___
Alison B. Prout
 *Assistant United States Attorney*
Georgia Bar No. 141666

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181